IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MITCHELL WHITE, | 3:07-CV-01574-AC |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| GUY HALL; MAX WILLIAMS;<br>MR. THOMPSON, Food Services, TRCI;<br>LIGHTBARN, Food Services, TRCI;<br>MS. WHELAN, Health Services, TRCI;<br>HERNANDEZ, Medical Nurse; and<br>DR. LIDOL, | |
| Defendant. | |

_____

ACOSTA, Magistrate Judge:

*Introduction*

Defendants Guy Hall, Max Williams, Mr. Thompson, Mr. Hall, Lightbarn, Ms. Whelan, Hernandez, and Dr. Lidol[1] (collectively "Defendants") move for summary judgment on Plaintiff

_____

[1] Dr. Lidol's real name is Dr. Lytle, and he will be referred to by his proper name from this point forward in this Findings and Recommendation.

FINDINGS AND RECOMMENDATION        1                        {WSB}

Mitchell White's ("White") remaining claim that Defendants violated his rights to due process and equal protection by denying him proper medical treatment when he injured his toe. Defendants argue that White does not have a valid due process or equal protection claim; that White has not established an Eighth Amendment violation; that Defendants are entitled to qualified immunity; that Gary Hall and Lightbarn were dismissed from this suit by a previous order; that Guy Hall, Whelan, and Williams should be dismissed because they cannot be held liable on a *respondeat superior* theory under 42 U.S.C. § 1983; and that any potential state tort claims must be dismissed under the Eleventh Amendment. For the reasons stated, Defendants' motion for summary judgment should be granted.

*Procedural Background*

White filed his present civil rights complaint on October 22, 2007, and alleged that Defendants violated his rights to due process and equal protection under the Fourteenth Amendment by: (1) denying him progressive discipline in an incident where his presence or absence in the kitchen was an issue; (2) failing to transfer him to a minimum security facility after he was qualified for and requested such a transfer; and (3) denying him proper medical treatment when he injured his toe. White seeks additional medical treatment, $250,000 in punitive damages, and reimbursement for his doctor bill, lawyers fees, filing fees, and disciplinary fees. (Pl.'s Compl. ("Compl.") at 14.[2]) On November 25, 2008, this court recommended that White's claims be dismissed for failure to exhaust administrative remedies. *White v. Hall*, No. Civ. 07-01574-AC, 2009 WL 602975, slip copy at *4 (D. Or. March 6, 2009). On March 6, 2009, Judge Ancer L. Haggerty issued an order adopting

---

[2]This court refers to the electronic court filing pagination because White's pagination is confusing.

this court's recommendation.

White appealed Judge Haggerty's order to the Ninth Circuit Court of Appeals ("Ninth Circuit"). The Ninth Circuit affirmed in part and reversed in part.[3] On remand, the only issue remaining is White's claim regarding medical treatment of his injured toe. Defendants now move to for summary judgment on this claim. White filed a verified amended complaint in accordance with 28 U.S.C. § 1746. The verified amended complaint is based, at least in part, on White's personal knowledge of admissible evidence. As such, it constitutes as opposing affidavit and must be considered by the court in conjunction with Defendants' motion for summary judgment. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995).

White has not filed any opposition to Defendants' motion for summary judgment despite being advised on February 20, 2008, of his duty to do so with a Summary Judgment Advice Notice. Even in the absence of formal opposition materials, this court may not grant summary judgment by default and must determine whether summary judgment is appropriate on the record before it. *See Gupta v. Terhune*, 262 Fed. Appx. 772, 773 (9th Cir. 2007) (citing the Ninth Circuit's holding in *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003), that a "nonmoving party's failure to oppose summary judgment 'does not excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law.'").

*Factual Background*

On September 19, 2007, White injured his toe while playing basketball. (Compl. at 9.) On September 20, 2007, White went to sick call at Two Rivers Correctional Institution ("TRCI") Health

---

[3] The Ninth Circuit affirmed the order dismissing White's claims that he was denied progressive discipline and that Defendants failed to transfer him to a minimum security prison.

FINDINGS AND RECOMMENDATION    3    {WSB}

Services, where he was incarcerated, and Nurse Hernandez "simply told [him] to 'ice it'" and elevate it. (Compl. at 9, 12.) On September 21, 2007, White was again seen at TRCI Health Services. (Decl. of Greg Lytle, D.O. ("Lytle Decl.") ¶ 5.) At that appointment the nurse ordered White to elevate, rest, and ice his foot.[4] (Lytle Decl. ¶ 5.) White also indicates he was told not to wear a shoe and that he would be scheduled for x-rays as soon as possible. (Compl. at 9.)

On September 24, 2007, an x-ray was taken of White's right foot that showed a fracture of the right great toe. (Lytle Decl. ¶ 6.) White asserts that he was denied full visual access of the x-ray to see the extent of his injury. (Compl. at 9.) White does not assert that he requested to view the x-ray. Also, Greg Lytle, D.O. ("Dr. Lytle") notes in his declaration that there are no notations in the medical record that indicate White requested to view his x-ray, and if he did make said request he would have been shown the x-ray by Dr. Lytle, a nurse, or the x-ray technician. (Lytle Decl. ¶ 7.) On October 2, 2007, TRCI Health Services took a second x-ray of White's right foot, which was sent to Jeremy Anderson, M.D. ("Dr. Anderson"). (Lytle Decl. ¶ 9.) Dr. Anderson suggested a Open Reduction and Internal Fixation ("ORIF") of the right great toe. (Lytle Decl. ¶ 9.) White asserts that he was denied full visual access to the second x-ray of his right foot. (Compl. at 10.) White does not assert that he requested to view the second x-ray.

On October 4, 2007, White was sent to Dr. Anderson for a pre-operative appointment. (Lytle Decl. ¶ 10.) According to White, at the October 4, 2007, appointment Dr. Anderson denied him pain medication. (Compl. at 10.) On October 5, 2007, White was sent to Good Shepard Medical Center for the ORIF on his right great toe. (Lytle Decl. ¶ 11.) The surgery was performed, and White was

---

[4]This nurse was not identified in Dr. Lytle's declaration or White's complaint and is not a party to this action.

FINDINGS AND RECOMMENDATION        4                                    {WSB}

sent back to TRCI with crutches and a walking boot; he was advised "not to walk on his foot and to keep it clean, dry, elevated, and iced." (Lytle Decl. ¶ 11.) White asserts that after returning to TRCI Officer Kreeger denied him "proper protection" for his right foot, like a plastic bag, to prevent moisture getting into his dressings and causing infection. (Compl. at 10.)

White represents that on October 9, 2007, defendant Hernandez informed an officer that she took him off his pain medication. (Compl. at 12.) On October 10, 2007, the sick call nurse informed White he was never taken off his medication. (Compl. at 13.) Between October 6, 2007, and October 19, 2007, White visited TRCI Health Services a number of times regarding his foot and his pain medication. (Compl. ¶¶ 12-17.) On October 18, 2007, Greenwald, N.P., ordered (1) White be placed on medical lay-in to make him compliant with surgeon orders not to walk on his foot; (2) White's prescription pain medication be discontinued; and (3) White be given the over-the-counter pain medication of his choice. (Compl. ¶ 17.)

On November 8, 2007, White had a follow-up appointment with Dr. Anderson who removed the dressing, noted the incision was well healed, removed the sutures, and noted that the x-ray from TRCI showed good positioning of the pins and healing of the toe fracture. (Lytle Decl. ¶ 19.) Dr. Anderson removed the pins; applied a sterile dressing; and again x-rayed the right foot. (Lytle Decl. ¶20.) Dr. Anderson noted White's foot looked "excellent," and gave orders to be followed for the following two weeks as the foot finished healing. (Lytle Decl. ¶ 20.) Dr. Anderson noted that he discussed with White that there would be "some posttraumatic arthritis in the joint." (Lytle Decl. ¶ 20.)

On January 10, 2008, Dr. Lytle ordered a follow-up x-ray of White's right foot. (Lytle Decl. ¶ 22.) The x-ray shoed that White's fracture was healing with "relatively mild deformity." (Lytle

Decl. ¶ 22.)

*Legal Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2011). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). However, deference to the nonmoving party has limits. The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

*Discussion*

I.  White's Fourteenth Amendment Claim

      White alleges Defendants violated his rights to due process and equal protection under the Fourteenth Amendment by denying him proper medical treatment when he injured his toe.  White alleges that his rights were violated by Defendants in the following ways:

> C/O Peres - who called medical when they refused to see/take notice of my injury. Hernandez - (Nurse) who refused to provide me with adequate medical attention. Dr. [Lytle] - who refused to allow me to be prescribed medication and to reset my toe so it would heal properly.  Medical/[X-ray] (Lady) who refused to allow me to fully view all [x]-rays. Ms Whelan - (health services manager) - she refused to [supervise] all of her staff so that I could receive proper medical attention.  Guy Hall - failed to instruct, properly supervise or take responsibility for those who are employed under his case.

(Compl. at 6.)

      A.     *Procedural Due Process Claim*

      "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  To invoke its procedural protection, a plaintiff must establish three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. Cnty. of Santa Clara,* 995 F.2d 898, 904 (9th Cir. 1993).  A liberty interest may arise from the Constitution or "from an expectation or interest created by state laws or policies." *Wilkinson*, 545 U.S. at 221.  For example, the Constitution does not give rise to a "liberty interest in avoiding transfer to more adverse conditions of confinement." *Id*. (citing *Meachum v. Fano*, 427

U.S. 215, 225 (1976)).  However, the Constitution does give rise to a liberty interest "of prisoners and their correspondents in uncensored communication by letter, grounded . . . in the First Amendment."  *Procunier v. Martinez*, 416 U.S. 396, 418 (1974).  Subject to the limitations set forth in *Sandin v. Conner*, 515 U.S. 472 (1995), state policies or regulations may give rise to "a liberty interest in avoiding particular conditions of confinement."  *Wilkinson*, 545 U.S. at 221-22.  For example, in *Wilkinson*, the Supreme Court concluded that the conditions at Ohio State Penitentiary, a "Supermax" or highest security prison, gave "rise to a liberty interest in their avoidance."  *Id*. at 224.

White alleges that his right to procedural due process under the Fourteenth Amendment was violated, but he fails to support a claim for a procedural due process violation.  In order to establish a claim, White needs to identify a liberty interest protected by the Constitution or created by state laws or policy.  His complaint does not identify a liberty interest.  Even if a liberty interest could be identified, he does not establish a claim because he does not identify how the government deprived him of that hypothetical interest.  White comes closest to establishing a procedural due process violation when he writes in his complaint that "Ms. Nelson refuses to process grievances (or) . . . investigate." (Compl. at 13.)  This allegation has no bearing on his claim because Ms. Nelson is not a party to this action.  White has failed to establish elements essential to his claim and, therefore, does not have a valid procedural due process claim.

   B. *Substantive Due Process Claim*

The Fifth and Fourteenth Amendments' guarantee of "due process of law" are interpreted to have a substantive component.  *Reno v. Flores*, 507 U.S. 292, 301-02 (1993) (emphasis in original).  The substantive component "forbids the government to infringe certain 'fundamental' liberty

FINDINGS AND RECOMMENDATION 8 {WSB}

interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Id*. at 302. To establish a violation of substantive due process for a 42 U.S.C. § 1983 claim, "a plaintiff is ordinarily required to prove that a challenged government action was 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996) (quoting *Euclid v. Amber Realty Co.*, 272 U.S. 365, 395 (1926)) (overruled on other grounds by *Nitco Holding Corp. V. Boujikian*, 491 F.3d 1086 (9th Cir. 2007)). "However, [w]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [a plaintiff's] claims." *Patel*, 103 F.3d at 874 (alteration in original) (citations omitted).

Here, White's allegation of violation of his right to substantive due process is without merit because White's allegation should be analyzed under the Eighth Amendment. White alleges deliberate indifference by the prison officials to a serious risk of harm to himself, which is specifically protected against by the Eighth Amendment's guarantee against cruel and unusual punishments. White alleges that Correction Officer ("C/O") Perez refused to see or take notice of his injury; that Nurse Hernandez refused to provide him with adequate medical attention; that Dr. Lytle refused to allow him to be prescribed medication and to reset his toe; and that Ms. Whelan refused to supervise her staff so that he could receive proper medical attention. Because White is protected against the harms he alleges by the Eighth Amendment, this court must analyze his claim under Eighth Amendment and consider his claim for violation of his right to substantive due process without merit.

...

C.  *Equal Protection Claim*

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. In other words, all persons similarly situated should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982). "Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race." *Romero v. Yates*, CASE No. 1:08-cv00669-LJO-MJS (PC), 2011 U.S. Dist. LEXIS 53850 (E.D. Cal. May 18, 2011) (citing *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005)). Accordingly, in order to establish a violation of the Equal Protection Clause, a plaintiff must establish that he was treated differently from other similarly situated individuals with respect to the governmental act, statute, or regulation because of his membership in a protected class. *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Such discrimination must be also intentional such that "a defendant acted at least in part *because of* a plaintiff's protected status." *Maynard v. San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (citing *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (emphasis in original)).

The Equal Protection Clause extends to incarcerated individuals: "Prisoners are protected under the Equal Protection Clause . . . from invidious discrimination based on race." *Serrano v. Francis*, 345 F.3d 1071, 1081-82 (9th Cir. 2003) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1973)). To avoid summary judgment on such a claim, the prisoner "'must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the decision was racially motivated.'" *Id.* (quoting *Bingham v. City of Manhattan Beach*, 329 F.3d 723,

732 (9th Cir. 2003) (citations and alterations omitted)).

White has not established a claim for violation of his right to equal protection because he has not established that he is a member of a protected class or that he was treated differently from other similarly-situated individuals. White comes closest to establishing a claim for violation of his right to equal protection occurs when he writes in his complaint that C/O Perez jeopardized White's safety and security by failing to contact his superior officer when White told him about his broken toe and pain. "He has jeopardized my safety [and] security as well as failed to give me due process [or] relief, he has discriminated against me by not treating me fairly." (Compl. at 13.) Nonetheless, White has not established an equal protection claim because C/O Perez is not a party to this action. In addition, even if C/O Perez was a party to this action, White has not established a claim for violation of his right to equal protection because he fails to allege that he is a member of a protected class and does not offer evidence of how C/O Perez discriminated against him based on his protected status. He says C/O Perez did not treat him "fairly," but does not prove, or even mention, how C/O Perez's treatment was different from other prisoners or racially motivated. Therefore, White has not established essential elements of his claim and does not have a valid equal protection claim.

III. Eighth Amendment Claim

Although White does not specifically allege an Eighth Amendment claim, the court reads his complaint as intending to allege violation of his Eighth Amendment right to be free of cruel and unusual punishments because the Eighth Amendment specifically protects against the harms White alleges.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A prison official

violates the Eighth Amendment when two requirements are met. *Id*. at 834. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. "The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

"Deliberate indifference" "describes a state of mind more blameworthy than negligence . . . [and] requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "Acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836. "To act recklessly . . . a person must 'consciously disregar[d]' a substantial risk of serious harm." *Id*. at 839 (citing Model Penal Code § 2.02(2)(c)).

"A prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 105. "An inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" *Id*. "A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id*. at 106. "Mere allegations of malpractice do not state a claim" under the Eighth Amendment. *Id*. "A plaintiff's showing of nothing more than 'a difference of medical opinion' as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1995) (citing *Sanchez v. Vild*, 891

F.2d 240, 242 (9th Cir. 1989)). "A prisoner can make 'no claim for deliberate medical indifference unless the denial was harmful.'" *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (quoting *Shapely v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

White has failed to establish an Eighth Amendment violation because he has failed to show that TRCI prison officials were deliberately indifferent to his serious medical need or that denial of proper medical treatment resulted in a harm. White alleges that his rights were violated in the following ways by Defendants: C/O Perez refused to take notice of his injury; Nurse Hernandez refused to provide him with adequate medical attention; Dr. Lytle refused to allow him to be prescribed medication and to reset his toe; the woman who took his x-rays refused to allow him to fully view them; and Ms. Whelan refused to supervise her staff so that he received proper medical attention. (Compl. at 6.) White's complaint alleges medical negligence and difference of medical opinion, which are insufficient to establish deliberate medical indifference.

White alleges C/O Perez refused to see or take notice of his injury and that C/O Kreeger refused to provide a plastic bag to cover his foot and protect it from moisture. C/O Perez and C/O Kreeger are not parties to this action. Therefore, White's allegations against C/O Perez and C/O Kreeger are without merit.

White alleges that on September 20, 2007, he went to sick call at TRCI and Nurse Hernandez "simply told [him] to 'ice it.'" (Compl. at 9, 12.) He writes in his complaint that "it is a simple statement of fact that in order to [prescribe] . . . proper medicine one needs to first thoroughly examine the injury." TRCI's Health Services protocol for fractures indicates that at a nurse's discretion ice may be used as a "plan" for a fracture. (Decl. of Shannon Johnston, R.N., Attach. 3 at 1.) Therefore, White's allegation appears to be nothing more than a difference of medical opinion,

FINDINGS AND RECOMMENDATION        13                              {WSB}

insufficient to establish deliberate indifference. White also alleges Nurse Hernandez misled him because she told an officer that she took him off his medication, when he was never taken off his medication. Again, this allegation, even if true, does not satisfy the standard of deliberate medical indifference because White does not allege that this resulted in harm.

White also alleges he was denied full visual access to his x-rays, but this was not deliberate medical indifference for two reasons. First, White does not assert that he requested to see his x-rays and Dr. Lytle notes in his declaration that White's medical record shows no requests by White to see his x-rays. Second, White does not allege that harm resulted from denying him full visual access to his x-rays.

White alleges that at his October 4, 2007, appointment Dr. Anderson denied him pain medication. Dr. Anderson is not a party to this action. Therefore, this allegation does not establish an Eighth Amendment violation.

White also alleges Dr. Lytle refused to prescribe him medication and reset his toe so that it would heal properly. (Compl. at 6.) As shown by the factual background, White went to see Dr. Anderson and an ORIF was performed on White's right great toe. At a follow-up appointment with Dr. Anderson, he noted White's foot looked "excellent." White received medical treatment, including surgery, for his injured toe. Therefore, White's allegations against Dr. Lytle appear to be nothing more than a difference of medical opinion, which is insufficient as a matter of law to establish an Eighth Amendment violation.

White also has not shown that denial of proper medical treatment resulted in harm. In order to make a claim for deliberate medical indifference, the denial must be harmful. Dr. Anderson noted at a post-operative appointment that White's foot looked "excellent." In January 2008, Dr. Lytle

FINDINGS AND RECOMMENDATION        14                                {WSB}

ordered a follow-up x-ray that showed White's right foot was healing with "relatively mild deformity." White has not shown how, or even argued that, his medical treatment at TRCI Health Services resulted in harm.

White has not met the standard for establishing deliberate medical indifference. He has alleged differences of medical opinion and claims against persons not parties to this action. He has not shown denial of adequate medical treatment that resulted in harm to him. Therefore, White has failed to establish essential elements of an Eighth Amendment violation and does not have a valid claim.

*Conclusion*

Defendants' motion (#64) for summary judgment against White's remaining claim for violation of his rights to due process, equal protection, and freedom from cruel and unusual punishments should be GRANTED.[5]

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due August 31, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and

---

[5] In light of the fact White cannot make out a due process claim, an equal protection claim, or an eighth amendment violation, this court need not address Defendants' other arguments that they are entitled to qualified immunity; that Gary Hall and Lightbarn were dismissed from this suit by previous order; that Guy Hall, Wheelan, and Williams should be dismissed because they cannot be held liable on a *respondeat superior* theory under 42 U.S.C. § 1983; and that any potential state tort claims must be dismissed under the Eleventh Amendment.

Recommendation will go under advisement.

DATED this 16th day of August, 2011.

                                                /s/ John V. Acosta
                                            JOHN V. ACOSTA
                                     United States Magistrate Judge